Burket, C. J.
The contention of plaintiff in error to the effect that the act in question was not passed by the general assembly is not well taken. The allegations in the answer, and admitted by the demurrer, show a legal passage of the act.
It is further contended by plaintiff in error, that the act is invalid, in that it contravenes the constitution of this state, being, as is alleged, a special act conferring corporate power, and a law upon a general subject, not having a uniform operation throughout the state.
We regard the act as general, and not special, and *405 as having a uniform operation throughout the state. The power conferred upon all cities alike to provide by ord inance for the number of members to constitute the board of public service and the board of publie safety, within the limits fixed by the act, does not render the act special, nor does it introduce a special classification. All cities have exactly the same powers, but they may exercise those powers by ordinance within the limits of the act, as may be best for the respective cities.
While all cities must have the same powers they cannot be required to exercise them in the same manner. Uniformity of powers, does not imply uniformity of ordinances.
The answer to the petition as to the passage of the act, and as to its validity, therefore states a good defense to the petition, and as to these matters the demurrer to the answer was properly overruled.
The question remains as to whether the answer states a good defense to the petition as to the number of wards into which the city of Cincinnati .should be divided under the act in question.
The resolution requires the city to be divided into» twenty-six wards, and plaintiff avers in his petition, that this is not the number required by the act in question, because the population of the city at the last federal census was 325,902, but he fails to state the-number of wards which that population requires. The answer avers the correct number to be twenty-six.
Section 117 of the act provides that the council* shall subdivide the city into wards equal in number to the members of council in said citv who are to be elected from wards therein. Therefore the number of members of council to be elected from wards must *406 be first ascertained, and that will determine the num-her of wards.
Section 116 of the act provides as to the number of members, and is as follows:
'“Section 116. The legislative power of every city shall be vested in, and exercised by, a council, composed of not less than seven members, four of whom shall be elected by wards and three of whom shall be elected by the electors of the city at large; provided, that for the first 20,000 inhabitants in any city, in addition to the original 5,000, there shall be two additional members of council elected by wards, and for every 15,000 inhabitants thereafter there shall be one additional member similarly elected. Provided, further, that whenever the total number of members of council is fifteen or more, one member of every five shall be elected at large, and the remainder from wards. Members of council shall serve for a term of two years and until their successors are elected and qualified.”
By another section, at least 5,000 inhabitants are required to constitute a city, and by the above section a city of 5,000 and under 25,000 inhabitants, will have seven members of council; no more and no less. Where there are 20,000 inhabitants in addition to the original 5,000, two more are allowed, making nine for a city of 25,000, and under 40,000 inhabitants. After passing the 25,000 mark, it is provided that for every 15,000 inhabitants, one additional member shall be elected. Take said first 25,000 from the total population of the city 325,902 and there will remain 300,902. This divided by 15,000, gives twenty members to be elected by reason of said 300,902 inhabitants. The first 25,000 gave nine members, which *407 added to the twenty, makes twenty-nine in all, as the total for the whole city
Now as to the manner of election. The first 25,000 inhabitants gives nine members, six to be elected from wards, and three in the city at large. For every 15,000 after the first 25,000 one member is added'to be elected from a ward; but whenever the total number of members reaches fifteen or more, four out of every five are to be elected from wards, and one at large, .so that only three would be elected at large so long as the number of members is under twenty, but at twenty, four would be elected at large, and at twenty-five members, five would be elected at large, and it would stand at five until the number of members would reach thirty, but as the total number in Cincinnati is only twenty-nine, only five can be elected at large, and the remainder, twenty-four, from wards.
The same result is reached in another way. The first 25,000 inhabitants gives nine members, six to be elected from wards and three at large. When the number of members reaches fifteen, one out of every five, is to be elected at large. Fifteen divided by five gives three to be elected at large. To entitle a city to fifteen members, would require at least 115,000 inhabitants. After passing 115,000 inhabitants, with fifteen members of council, the next five members would require 75,000, which added to the 115,000, would make 190,000 inhabitants, and out of these five members, one would be elected at large, which added to the three, would make four to be so elected out of twenty members. Another 75,000 would give five more members, one to be elected at large, which added to the four would make five, and consume 265,000 inhabitants, which would leave only 60,902 inhabitants, *408 only enough for four more members, and therefore the number to be elected at large would remain at five.
Those to be elected from wards would be twelve out of the first fifteen members, four out of the next five members, four out of the succeeding five members, and the four members given by reason of the last 60,902 inhabitants, making twenty-four in all to be elected from wards, and five at large, the total being thus twenty-nine.
The same result is reached in any correct manner of figuring. The total number of members must be first ascertained without reference to the manner of their election, and when thus ascertained, the total number is twenty-nine.
The section of the statute in question is so constructed that the same result is attained whether the total number of members be divided by five, and the quotient five, taken as the number to be elected at large, and the remaining twenty-four as the number to be elected from wards, or whether the original three to be elected at large be added to the two to be elected at large out of the ten next after the first fifteen.
This construction and manner of calculation is fully warranted by the language used in the section, ¿nd is undoubtedly what the general assembly intended. It is the plain common sense of the section, without resorting to algebraic equations, or fine spun theories.
The calculation of counsel on both sides agree until the number of members reaches nineteen, and 175,000 inhabitants are consumed. The next 15,000 inhabitants are entitled to but one member, but defendants in error count two, one to be elected at large, and one from a ward. This is an error of one. The *409 same error is made as to the 15,000, from 235,000 to 250,000, two members are given for the same 15,000 inhabitants, one to be elected at large and one from a ward. The same error occurs as to the 15,000 from 295,000 to 310,000, two members are counted for the same 15,000 inhabitants. In this way six members are counted for the same 45,000 inhabitants, while the section authorizes but three, one for each 15,000. Of the three members thus erroneously injected into the count, two are counted to be elected from wards, making twenty-six, when the correct number is only twenty-four, and one is counted as being elected at large, making six, while the correct number is only five.
To sustain this erroneous count counsel for defendants in error invoke the law as to provisos in statutes, and cite Wayman v. Southard, 10 Wheat., 30, and Minis v. United States, 15 Pet., 443, 445. But these cases are not .of sufficient weight to induce this court to be misled in the construction of this statute. The controlling rule of construction is to ascertain the intent of the. general assembly, and when that is clear, from the language used, other rules of construction are not regarded.
In this section the word “provided” is used twice, and hence it is argued that there are two provisos in the section, that each must in some manner modify the enacting clause, and that the last proviso cannot modify the first.
“A proviso is generally used in a statute to qualify, limit or restrain the operation of general terms contained in a previous part of the section or act, and not to introduce a distinct and independent proposition.” Allen v. Parish, 3 Ohio, 187, 193. It will be noticed that this rule as to provisos does not go to the extent *410 of holding that a second proviso cannot modify a preceding one.
In 23 Am. and Eng. Ency. Law’- (1 ed.), 436, the rule is stated thus: “The proviso should be- confined to what immediately precedes, unless the contrary intent clearly appears.” Under this rule the second proviso in this section, wrnuld modify the first, because the first immediately precedes the second.
But these rules after all are intended only as aids to the court in ascertaining the intent of the general assembly, and should not be used to render that uncertain, which Avould otherwise be reasonably certain.
What is called the first proviso, does not in any manner qualify, limit or restrain that w’hich precedes it, but on the contrary it is an enactment in addition to what precedes. Up to the first proviso a city is given a council of seven members, no more, no less, four to be elected from wmrds, and three at large. The first proviso does not change this, but permits it to stand in all cases, and as the population increases makes an additional enactment, giving two more members up to 25,000 inhabitants, and then adds a further enactment giving one member for every 15,000 additional inhabitants. It is therefore clear that the first proviso is not strictly a proviso, but an additional enactment. That enactment having laid dowm a rule for ascertaining the number of members of ■council in every city in the state, is qualified, limited and restrained, as' to the manner of election, by wdiat is called the second proviso, so as to require one member out of every five, after fifteen, to be elected at large, and the remainder by wards.
' It is therefore clear that the city of Cincinnati is entitled to a total of only twenty-nine members of council, and that only twenty-four are to be elected from *411 wards, and that the city must, therefore, be sub divided into tw-enty-four Avards. The ansAver as to the number of wards is therefore not a defense to the petition, and the demurrer thereto should have been sustained, and the court of common pleas erred in ■overruling it, and also erred in rendering judgment in favor of said defendants beloAV. And the circuit court erred in affirming the judgment of the common pleas.
In argument counsel for plaintiff in error presented the following table, Avhich has been carefully examined by the court and found correct. As it may be useful to the cities of the state, the same is here inserted.

For the errors above pointed out. both judgments of the courts beloAV will be reversed, the said demurrer *412 to the answer sustained, and the cause remanded to. the court of common pleas for further proceedings according to law and this opinion.

Judgments reversed and cause remanded.

Spear, Dams, Si-iauck, Price and Crew, JJ., concur